UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAOUDA HILL,<br><br>        Petitioner,<br><br>    v.<br><br>A. P. KANE, warden,<br><br>        Respondent.           / | No. C 06-3203 SI (pr)<br><br>**ORDER DENYING HABEAS PETITION** |

## INTRODUCTION

Daouda Hill, a prisoner at the Correctional Training Facility in Soledad, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. This matter is now before the court for consideration of the merits of the pro se habeas petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

Daouda Hill was convicted in Madera County Superior Court of attempted first degree murder and shooting at an occupied vehicle. He was sentenced to life imprisonment with the possibility of parole in 1993. His habeas petition does not concern that conviction directly, but instead focuses on a November 30, 2004 decision by a panel of the Board of Prison Terms ("BPT") finding him not suitable for parole.

The BPT identified two circumstances in support of its determination that Hill was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if he was released: the circumstances of the offense and his in-prison behavior. The specifics regarding the crime and the circumstances supporting the finding of unsuitability are described in the Discussion section later in this order.

Hill sought relief in the California courts. The Madera County Superior Court denied his petition for writ of habeas corpus in 2005 in a reasoned order. Resp. Exh. D. The California Court of Appeal summarily denied Hill's petition for writ of habeas corpus and the California Supreme Court summarily denied his petition for review.

Hill then filed his federal petition for a writ of habeas corpus. The petition alleged that Hill's right to due process was violated because the BPT's denial of parole had insufficient evidentiary support. The court issued an order to show cause. Respondent filed an answer. Petitioner filed a traverse. The matter is now ready for a decision on the merits.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged action occurred at the Correctional Training Facility in Soledad, in Monterey County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). The parties do not dispute that state court remedies were exhausted for the claim asserted in the petition.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Williams (Terry) v. Taylor, 529 U.S. 362, 409-13 (2000).  Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole. See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

**DISCUSSION**

A. <u>Due Process Requires That Some Evidence Support a Parole Denial</u>

A California prisoner with a sentence of a term of life with the possibility of parole has a protected liberty interest in release on parole and therefore a right to due process in the parole suitability  proceedings. See Sass, 461 F.3d at 1127-28; Board of Pardons v. Allen, 482 U.S. 369 (1987); Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1 (1979); Cal. Penal Code § 3041(b).

A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision.  Sass, 461 F.3d at 1128-29 (adopting some evidence standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)). "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. Id. at 1128 (quoting Superintendent v. Hill, 472

3

1  U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so
2  devoid of evidence that the findings of the . . . board were without support or otherwise
3  arbitrary.'" Id. at 1129 (quoting Superintendent v. Hill, 472 U.S. at 457). The some evidence
4  standard of Superintendent v. Hill is clearly established law in the parole context for purposes
5  of § 2254(d). Sass, 461 F.3d at 1129.

6  Furthermore, and of key importance, the parole board is not precluded from relying on
7  unchanging factors such as the circumstances of the commitment offense or the petitioner's pre-
8  offense behavior in determining parole suitability. See id. at 1129 (commitment offenses in
9  combination with prior offenses provided some evidence to support denial of parole). The
10 familiar argument that the BPT cannot rely on these factors is based on the Ninth Circuit's
11 statements in Biggs v. Terhune, 334 F.3d 910 99th Cir. 2003), that suggested that the value of
12 the criminal offense fades over time as a predictor of parole suitability: "The Parole Board's
13 decision is one of 'equity' and requires a careful balancing and assessment of the factors
14 considered. . . . A continued reliance in the future on an unchanging factor, the circumstance
15 of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals
16 espoused by the prison system and could result in a due process violation." Biggs, 334 F.3d at
17 916-17. In Biggs, the Ninth Circuit upheld the initial denial of a parole release date based solely
18 on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that
19 "[o]ver time . . . , should Biggs continue to demonstrate exemplary behavior and evidence of
20 rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and
21 prior conduct would raise serious questions involving his liberty interest in parole." Id. at 916.
22 These statements were dicta and not clearly established federal law as set forth by the Supreme
23 Court, such that the state court's refusal to adopt the Biggs reasoning would be a decision
24 contrary to, or an unreasonable application of, clearly established federal law as set forth by the
25 Supreme Court. The Ninth Circuit recently backed away from the Biggs statements, and
26 confirmed that these statements from Biggs were dicta and were inappropriate under § 2254.
27 See Sass, 461 F.3d at 1129. "Under AEDPA it is not our function to speculate about how future
28 parole hearings could proceed." Sass, 461 F.3d at 1129.

4

What little guidance has come from the Supreme Court suggests that judicial review should be extremely deferential to the original decision-maker in the parole context. In addition to the very low evidentiary standard that Superintendent v. Hill imposes, other Supreme Court comments suggest that the judiciary should be quite mindful of the subjective and predictive nature of a parole board's decision. See Greenholtz, 442 U.S. at 13. "No ideal, error-free way to make parole-release decisions has been developed; the whole question has been and will continue to be the subject of experimentation involving analysis of psychological factors combined with fact evaluation guided by the practical experience of actual parole decisionmakers in predicting future behavior. Our system of federalism encourages this state experimentation." Id.; see also id. at 8.

Past criminal conduct is not some arbitrary factor like eye color that has nothing to do with present dangerousness. Recidivism concerns are genuine. See Ewing v. California, 538 U.S. 11, 26 (2003) (O'Connor J.) (noting a report stating that over 60% of violent offenders were arrested again within three years of their release). California's parole scheme does not offend due process by allowing the BPT to predict that an inmate presents a present danger based on a crime he committed many years ago.

Having determined that there is a due process right, and that some evidence is the evidentiary standard for judicial review, the next step is to look to state law because that sets the criteria to which the some evidence standard applies. One must look to state law to answer the question, "'some evidence' of what?"

B.      State Law Standards For Parole For Those Who Attempt Murder In California

California uses indeterminate sentences for attempted first degree murder, with the term being life imprisonment with the possibility of parole. The upshot of California's parole scheme described below is that a release date normally must be set unless various factors exist, but the "unless" qualifier is substantial.

A BPT panel meets with an inmate one year before the prisoner's minimum eligible release date "and shall normally set a parole release date. . . . The release date shall be set in a

5

manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates." Cal. Penal Code § 3041(a). Significantly, that statute also provides that the panel "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b).

One of the implementing regulations, 15 Cal. Code Regs. § 2401, provides: "A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c). A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d). A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public."[1] The regulation also provides that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2402(a). The panel may consider all relevant and reliable information available to it. 15 Cal. Code Regs. § 2402(b).

The regulations contain a matrix of suggested base terms for several categories of crimes. See 15 Cal. Code Regs. § 2403. For example, for attempted murder, the matrix of base terms

---

[1] The listed circumstances tending to show <u>unsuitability</u> for parole are the nature of the commitment offense, i.e., whether the prisoner committed the offense in "an especially heinous, atrocious or cruel manner;" the prisoner has a previous record of violence; the prisoner has an unstable social history, the prisoner previously engaged in a sadistic sexual offense, the prisoner has a lengthy history of severe mental problems related to the offense; and negative institutional behavior. 15 Cal. Code Regs. § 2402(c). The listed circumstances tending to show <u>suitability</u> for parole are the absence of a juvenile record, stable social history, signs of remorse, a stressful motivation for the crime, whether the prisoner suffered from battered woman's syndrome, lack of criminal history, the present age reduces the probability of recidivism, the prisoner has made realistic plans for release or developed marketable skills, and positive institutional behavior. 15 Cal. Code Regs. § 2402(d).

6

ranges from the low of 7, 8 or 9 years to a high of 13, 14, or 15 years, depending on some of the facts of the crime. See 15 Cal. Code Regs. § 2403(d). Some prisoners estimate their time to serve based only on the matrix. However, going straight to the matrix to calculate the sentence puts the cart before the horse because it ignores critical language in the relevant statute and regulations that requires him first to be found suitable for parole.

The statutory scheme places individual suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to ensure term uniformity. See In re Dannenberg, 34 Cal. 4th 1061, 1070-71 (Cal.), cert. denied, 126 S. Ct. 92 (2005). Under state law, the matrix is not reached unless and until the prisoner is found suitable for parole. Id. at 1070-71; 15 Cal. Code Regs. § 2403(a) ("[t]he panel shall set a base term for each life prisoner who is found suitable for parole"). The California Supreme Court's determination of state law in Dannenberg is binding in this federal habeas action. See Hicks v. Feiock, 485 U.S. 624, 629-30 (1988).

The California Supreme Court also has determined that the facts of the crime can alone support a sentence longer than the statutory minimum even if everything else about the prisoner is laudable. "While the Board must point to factors beyond the minimum elements of the crime for which the inmate was committed, it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release." Dannenberg, 34 Cal. 4th at 1071; see also In re Rosenkrantz, 29 Cal. 4th 616, 682-83 (Cal. 2002), cert. denied, 538 U.S. 980 (2003) ("[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole" but might violate due process "where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense").

C.     Some Evidence Supports The BPT's Decision In Hill's Case

The BPT identified two circumstances supporting its decision to find Hill unsuitable for parole, i.e., the circumstances of the offense and his in-prison behavior. The Madera County Superior Court upheld the decision in a reasoned order. Resp. Exh. D. The Madera court stated

1  that some evidence had to support the decision and found that some evidence did support the
2  decision. See id. at 1-2. That court applied the correct legal standard, as evidenced by its
3  citation to In re. Ramirez, 94 Cal. App. 4th 549, 564 (Cal. Ct. App. 2001), overruled on other
4  grounds in In re. Dannenberg, 34 Cal. 4th 1061 (Cal. 2005). Ramirez had cited and adopted the
5  Superintendent v. Hill some evidence standard as the proper standard for judicial review of
6  evidentiary sufficiency for parole denial cases. See Ramirez, 94 Cal. App. 4th at 562-64.
7  Because the Madera County Superior Court's decision is the last reasoned decision, that is the
8  decision to which 2254(d) applies. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991);
9  Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005), cert. denied, 126 S. Ct. 2041 (2006).

11     1.     Commitment Offense
12     The BPT described the facts of the offense taken from a statement of facts in the Board
13  Report:

> On May 23rd, 1992, at approximately 2:40 p.m., the victim, Mark Mathew . . . was travelling northbound on Highway 99 near Highway 152. The victim changed lanes so he could merge into Highway 152. Hill, along with two other passengers, drove his vehicle at a high rate of speed past the victim via the outside lane and merged into Highway 152 ahead of the victim. Shortly thereafter, both vehicles were side-by-side westbound on Highway 152. At this time, Hill and his two passengers began yelling at Mathew. Hill aimed the gun at the victim firing twice through his own right rear window with one bullet striking the victim's front windshield. Hill then sped off and turned north, northbound off of Highway 152.

19  November 30, 2004 BPT hearing transcript ("RT") 7-8. The victim was not harmed. Hill was
20  apprehended several months later.
21     The BPT considered the circumstances of the attempted murder and concluded that it was
22  an carried out in a cruel and callous manner. The BPT also determined that the motive for the
23  shooting was trivial or inexplicable.
24     The BPT considered a circumstance and factors proper under California law. A
25  circumstance tending to indicate unsuitability for parole is that the prisoner "committed the
26  offense in an especially heinous, atrocious or cruel manner." 15 Cal. Code Regs. § 2402(c)(1).
27  The factors to be considered in determining whether that circumstance exists are that there were
28  multiple victims, "[t]he offense was carried out in a dispassionate and calculated manner, such

as an execution-style murder," "[t]he victim was abused, defiled or mutilated during or after the offense," "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." 15 Cal. Code Regs. § 2402(c)(1).

There was some evidence in the record to support the BPT's determination that the circumstances of the attempted murder indicated unsuitability. The record supported a determination that the offense was committed in a callous and cruel way, as it involved shooting at an occupied car on a highway in the middle of the day. The shooting was motivated by road rage, and that was a trivial motive for it.[2] Although Hill argues that his admitted anger made the motive not inexplicable, the BPT determined that the motive was "inexplicable and very trivial in relation to the offense." RT 58. Even if anger at a fellow driver was not inexplicable, it was undeniably a trivial motive to shoot at him. It cannot be said that there was not some evidence to support the finding that the circumstances of the offense supported the denial of parole. The circumstances of the 1993 attempted murder, standing alone, provided some evidence to find that he was unsuitable for parole in 2004. The BPT identified more than the minimum elements of an attempted murder when it determined that Hill had shot at another person driving on the highway, and Hill had been convicted for shooting at an occupied car as well as for attempted murder. The evidence that Hill shot twice at the victim and shot at the victim while he was in a moving vehicle showed more than the minimum elements of an attempted first degree murder. See Dannenberg, 34 Cal. 4th at 1071.

### 2. In-Prison Behavior

The BPT found that Hill had "failed to demonstrate evidence of positive change. He has misconduct while incarcerated." RT 59. The misconduct specifically identified consisted of two

---

[2]To his credit, Hill had no criminal record as an adult or juvenile before the shooting. However, he admitted that he had once before used his gun. Although he did not shoot anyone, Hill did point his gun at his cousin's girlfriend in a debt collection effort less than a year before the shooting on the highway. RT 47-49. Hill's previous use of the gun undermines any suggestion that the highway shooting was a once-in-a-lifetime instance of bad judgment.

9

1  CDC-128(a)s and one CDC-115 – all since the last parole hearing in 2003.  One CDC-128(a)
2  counseling chrono was on February 22, 2004 for placing a third party call and the other CDC-
3  128(a) was for not being in possession of his ID card.  The CDC-115 rule violation report was
4  on September 24, 2004 for refusing to obey a direct order.  <u>See</u> RT 59.  These were only the
5  recent rule violation reports; Hill reports he had received a total of four CDC-115s and seven
6  CDC-128s in his decade in custody.  <u>See</u> Traverse, p. 2.

7        Consideration of and reliance on Hill's prison behavior and progress was not improper.
8  Although § 2402(c)(6) specifically lists only "serious misconduct in prison or jail" as a
9  circumstance tending to indicate unsuitability, the listed circumstances are not exclusive.  Also,
10 § 2402(b) allows the BPT to consider a great range of relevant and reliable information, such as
11 the prisoner's "past and present mental state," and "social history."  The direct disobedience of
12 a direct order that resulted in the most recent CDC-115, as well as two earlier CDC-115s for
13 possession of inmate manufactured alcohol that he apparently was selling to other inmates, RT
14 30, were serious misconduct that could be counted as tending to show unsuitability, even if the
15 CDC-128(a) chronos could not be counted.  Despite Hill's suggestion to the contrary, the in-
16 prison misconduct need not be violent in nature to support a finding of unsuitability.  Further,
17 the misconduct write-ups, especially in the time since the most recent parole hearing  is
18 unfavorable to Hill in that the sheer number of them indicate a mental state of a lack of desire
19 to conform to rules imposed by others.  <u>See</u> RT 32 (with regard to write-up for refusing to obey
20 a direct order, BPT panel member commented, "You know what it shows me, though.  It shows
21 you got a temper still because it says here, part of it says, Inmate Hill was not receptive to
22 counseling and stated, quote, 'That's fine.  I know how to play with the paperwork, too.'  You
23 were obviously angry.  All that you had to do was wipe [up the water you spilled] and you would
24 have avoided this write-up.")

25       Hill tries to downplay the importance of the CDC-115 and cast his behavior as approved
26 by a prison psychologist; however, the material he quotes from the psychologist's report is just
27 a recitation of what Hill had told to the psychologist.  <u>See</u> Traverse, p. 22.  The BPT was not
28 required to accept Hill's version of why he disobeyed a direct order, even if that version was

relayed by a psychologist.

Hill admits he has received four CDC-115s over the course of his incarceration. Traverse, p. 23. He tries to confine the BPT's reliance on his disciplinary write-ups to only his last CDC-115. The BPT decision may have highlighted the recent CDC-115 but did not exclude the other CDC-115s from its evaluation.

### 3.    There Was Enough Evidence To Support The Decision

The BPT noted that Hill had various in-prison achievements and no prior criminal record, but concluded that the positive factors did not outweigh the factors showing unsuitability. The nature of the commitment offense and the misbehavior in prison factors listed by the BPT in support of its determination that Hill was not suitable for parole had some evidentiary support. And the factors were factors that could be considered in determining parole suitability. There was no constitutional violation in the decision that Hill was unsuitable for parole. The Madera County Superior Court's rejection of Hill's petition was not contrary to or an unreasonable application of the Superintendent v. Hill requirement that some evidence must support the administrative decision. Hill is not entitled to the writ.

### CONCLUSION

For the foregoing reasons, the petition is denied on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: October ___, 2006

_____
SUSAN ILLSTON
United States District Judge